IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA WEBSTER, KENDALL MORRIS, APRIL ELLIS, and Other Employees Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § § | No. 3:07-CV-00919-M |
| GUILLERMO PERALES, GOLDEN RESTAURANTS, INC., CORRAL GROUP, INC., CG MANAGEMENT, LLC, CG MANAGEMENT II, LLC, CORRAL HOLDINGS, LLC, FAC CORRAL, LLC, GC MAC, LLC, GPGP, LLC, SUN HOLDINGS, LLC, SUNNY CORRAL MANAGEMENT, LLC, GP&B ENTERPRISE, INC., and Other Affiliated Partnerships, Corporations, or Associations, | § § § § § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, former employees of Defendant Golden Restaurants, Inc. ("Golden"), brought the instant suit alleging violations of the Fair Labor Standards Act. Pursuant to an arbitration agreement signed by Plaintiffs, Golden and the other Defendants filed a Motion to Compel Arbitration. Plaintiffs assert three grounds for avoiding arbitration: (1) the arbitration provision omits material terms and is thus unenforceable; (2) the National Labor Relations Act ("NLRA") precludes arbitration of Plaintiffs' claims; and (3) the arbitration provision is unenforceable against Plaintiff April Ellis, who was a minor under Texas law at the time she signed the

arbitration provision. The Motion is **GRANTED** in part and **DENIED** in part. Because the Court rejects the first two grounds for avoiding arbitration, but finds the third ground persuasive, all Plaintiffs except for Ellis are required to submit their claims to arbitration. Finally, Plaintiffs do not dispute that the Agreement also requires arbitration of their claims against Golden's successors, subsidiaries and affiliates, shareholders, partners, and owners. Accordingly, all Plaintiffs, with the exception of Ellis, are required to submit their claims against the Defendants to mandatory arbitration.

## BACKGROUND

Plaintiffs Lisa Webster, Kendall Morris, and April Ellis were employees of Defendant Golden. During the course of their employment, each Plaintiff applied to participate in Golden's Employee Injury Benefit Plan ("Plan"). As a condition of participating in the Plan, Golden required each Plaintiff to sign an identical Waiver and Arbitration Agreement ("Agreement"). Plaintiffs urge, without contradiction, that Ellis was a minor when she signed the Agreement. The Agreement described the claims and disputes subject to mandatory arbitration and permitted each Plaintiff to renounce the Agreement within five days of its execution. The relevant provision of the Agreement, titled "Claims Subject to Arbitration," required Plaintiffs to submit to arbitration "all claims and disputes that I [each Plaintiff] may now have or may in the future have against the Company [Golden Restaurants] and/or against its successors, subsidiaries and affiliates and/or any of their officers, directors, shareholders, partners, owners, employees and agents or against any Company employee benefits plan." Although the Agreement did not detail the procedures to be employed at arbitration, it incorporated by reference the procedures described in the Summary Plan Description ("Plan Summary"). In the Agreement, the Plaintiffs acknowledged receiving the Plan Summary.

Although the full terms of the arbitration agreement were embodied in the Agreement and Plan Summary, only the Agreement was included in the Appendix to Defendants' Motion. Thus, the Court does not consider the Plan and Plan Summary for purposes of the analysis below, except as otherwise stated.

## ANALYSIS

*Whether the arbitration provision was indefinite*

To adjudicate a motion to compel arbitration under the Federal Arbitration Act (the "FAA"),[1] courts conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question.[2] The next step is to determine whether any statute or policy renders the dispute non-arbitrable.[3] The first step involves two considerations: (1) whether whether there is a valid agreement to arbitrate between the parties, and if so, (2) whether the dispute in question falls within the scope of the arbitration agreement.[4] To resolve these issues, courts apply ordinary principles of state law governing contract formation.[5] Here, the arbitration provision's validity, rather than its applicability to the instant dispute, is challenged by Defendants, so the Court addresses only questions of validity.

Plaintiffs' first contention of invalidity is that the arbitration provision in the Agreement, which does not itself detail the procedures of the arbitration, does not reflect a meeting of the minds of the parties on a material aspect of the overall contract. Before addressing the merits of this argument, it is helpful to note what Plaintiffs are *not* arguing. Plaintiffs do not contend that the FAA requires certain terms be included in an arbitration agreement for it to be enforceable.

---

[1] 9 U.S.C. § 2.
[2] *Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir.1996).
[3] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985).
[4] *OPE Int'l LP v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 445 (5th Cir. 2001); *Webb,* 89 F.3d at 258.
[5] *OPE Int'l LP*, 258 F.3d at 445-46; *Webb,* 89 F.3d at 258.

Rather, Plaintiffs argue that the arbitration provision here violates a basic requirement of contract formation: clear consensus on all of the material elements of an agreement.

Here, the requisite meeting of the minds existed because the parties agreed on the terms and procedures governing arbitration. Plaintiffs reviewed and signed the Agreement, which expressly incorporated the procedures in the Plan Summary. Plaintiffs do not deny receiving the Plan Summary or signing the Agreement. Because the Plan Summary, which details the applicable procedures for arbitration, were not contained in Defendants' submissions to the Court, the substance of these procedures is not discernible. Nonetheless, Plaintiffs' signature on the Agreement, which expressly incorporated the procedures detailed in the Plan Summary, confirms the *existence* of a meeting of the minds, even if the *content* of that consensus is unknown. Thus, Plaintiffs' first ground for avoiding arbitration fails.

Plaintiffs' second contention is that the omission of the Plan Summary from Defendants' Appendix makes it impossible for the Court to determine whether the specified procedures are substantively unconscionable. Because arbitration agreements are presumptively valid,[6] Plaintiffs bear the burden of establishing that the arbitration provision here is unenforceable. Plaintiffs cannot meet this burden. Plaintiffs' citation of cases invalidating various types of arbitration provisions is unavailing: none of the provisions determined to be unconscionable in those cases is shown to exist here. Plaintiffs, who do not dispute that they possess copies of the Plan Summary, had an opportunity to identify unconscionable provisions in any of those

---

[6] *See* 9 U.S.C. § 2 ("A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

documents. They have failed, however, to identify a single such provision. Because Plaintiffs have not carried their burden, their second ground for avoiding arbitration also fails.

*Whether the National Labor Relations Act bars enforcement of the arbitration provision*

Plaintiffs next contend that arbitration of their Fair Labor Standards Act ("FLSA") claims would foreclose judicial remedies guaranteed by Section 7 of the National Labor Relations Act ("NLRA").[7] Plaintiffs' construction of Section 7, however, is inconsistent with Fifth Circuit precedent, is unsupported by the text and legislative history of the NLRA, and misconstrues a key companion provision to Section 7.

Section 7 of the NLRA entitles employees "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."[8] Plaintiffs maintain the applicability of Section 7 to this dispute. They contend that the collective prosecution of their FLSA claims in this suit is a "concerted action" for the "mutual aid or protection" of employees, which is guaranteed by Section 7 of the NLRA. Accordingly, Plaintiffs conclude that mandatory arbitration would violate Section 7, by denying them a judicial forum in which to prosecute their statutory claims. Plaintiffs do not contend that any other applicable state or federal statute, such as the FLSA, bars mandatory arbitration. Hence, the sole issue for determination on this point is whether the NLRA precludes arbitration of Plaintiffs' FLSA claims.

To determine whether a statute precludes mandatory arbitration, the relevant question is whether "Congress itself has evinced an intention to preclude a waiver of judicial remedies for

---

[7] 29 U.S.C. § 157 (2000).
[8] *Id.*

the statutory rights at issue."[9] Evidence of Congress's intent to prohibit mandatory arbitration may be found in the text of the statute, its legislative history, or an inherent conflict between arbitration and the statute's underlying purposes.[10] In construing the relevant statute, the Court is guided by the Supreme Court's instruction that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."[11] The party seeking to avoid arbitration bears the burden of overcoming the "strong presumption" of arbitrability, by demonstrating that Congress intended to bar the party from waiving its right to enforce its statutory claims in federal court.[12] Given this high burden, the Supreme Court has rarely found congressional intent to preclude arbitration of statutory claims.[13]

Here, Plaintiffs fail to adduce any evidence from the text or the legislative history of the NLRA evidencing Congress's intent to preclude mandatory arbitration of FLSA claims. Plaintiffs correctly observe that Section 7 entitles employees to engage in collective action for mutual protection, and that a federal suit by employees to enforce a statutory right is a collective action.[14] Plaintiffs cannot establish, however, that Section 7 forbids employees from *waiving* their right to a judicial forum, by agreeing to arbitrate disputes. To the contrary, Plaintiffs' construction of the NLRA is inconsistent with Supreme Court and Fifth Circuit precedent permitting arbitration of federal statutory claims.[15] In *Carter v. Countrywide Credit Industries,*

---

[9] *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294 (5th Cir. 2004).
[10] *Id.*
[11] *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983).
[12] *Carter*, 362 F.3d at 294; *see also Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 227 (1987).
[13] *Carter*, 362 F.3d at 297.
[14] *See Eastex, Inc. v. National Labor Relations Board*, 437 U.S. 556, 565-66 n.15; *see also Mohave Electric Cooperative, Inc. v. National Labor Relations Board*, 206 F.3d 1183, 1189 (D.C.Cir. 2000); *Prill v. National Labor Relations Board*, 835 F.2d 1481, 1483 (D.C.Cir. 1987) (noting that complaint of single employee is deemed concerted action when taken "with the actual participation or on the authority of his co-workers").
[15] *Cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (holding that the Age Discrimination in Employment Act did not preclude mandatory arbitration of Plaintiff's statutory claims) ; *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 285 (5th Cir. 2007) (holding that employee's claims under the Jones Act were subject

*Inc.*, decided by this Court and affirmed on appeal, Plaintiffs similarly argued that mandatory arbitration of their FLSA claims would interfere with the collective prosecution of their rights in a judicial forum.[16] The Fifth Circuit, finding no evidence of Congress's intent to bar employees from waiving judicial enforcement, rejected that argument, mandating arbitration of Plaintiffs' claims.[17]

Plaintiffs respond that the arbitration provision here violates Section 8(a)(1) of the NLRA, a companion provision to Section 7.[18] Section 8(a)(1) bars an employer from engaging in in unfair labor practices, defined as interfering with, restraining, or coercing employees in the exercise of rights guaranteed in Section 7.[19] Unfair practices proscribed by Section 8(a)(1) include termination or demotion of an employee.[20] Here, however, there is no allegation of coercion, undue pressure, or any unfair practices by Golden to procure Plaintiffs' assent to the arbitration provision. To the contrary, Plaintiffs expressly acknowledged that their agreement to arbitrate was made voluntarily and without duress, pressure, or coercion.[21] In the absence of specific allegations of unfair labor practices, Plaintiffs cannot establish that enforcement of the arbitration provision would violate Section 7 or Section 8(a)(1) of the NLRA.

Two decisions cited by Plaintiffs, *National Licorice Co. v. National Labor Relations Board*[22] and *Bentley's Luggage Corporation*[23] are also unavailing. Plaintiffs construe *National*

---

to arbitration); *Carter*, 362 F.3d at 298 (holding that the FLSA does not preclude arbitration of Plaintiffs' statutory claims); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 229-30 (5th Cir. 1991) (subjecting Plaintiff's Title VII claims to compulsory arbitration).
[16] 362 F.3d at 297; *see Carter v. Countrywide Credit Industries, Inc.*, 189 F.Supp.2d 606 (N.D.Tex. 2002).
[17] *Id.* at 298.
[18] 29 U.S.C. § 158(a)(1).
[19] *Id.*
[20] *See Eastex, Inc.*, 437 U.S. at 565-66.
[21] Waiver and Arbitration Agreements signed by Plaintiff Webster (APPENDIX, ATTACHMENT 1, P. 4), Plaintiff Morris (APPENDIX, ATTACHMENT 2, P. 8), and Plaintiff Ellis (APPENDIX, ATTACHMENT 3, P.12).
[22] 309 U.S. 350, 350 (1940).
[23] *Bentley's Luggage Corporation*, No. 12-CA-16658, 1995 National Labor Relations Board GCM LEXIS 92, *1

*Licorice Co.* as barring "individual contracts which purport to waive rights protected by Section 7." The holding in *National Licorice Co.* was actually much narrower than that asserted by Plaintiffs. There, the Supreme Court did not fashion a *per se* rule barring employees from waiving their Section 7 rights. Rather, the Court found that Plaintiffs' waiver of their Section 7 rights was invalid, because it was obtained through coercive tactics proscribed by Section 8(a)(1), none of which are claimed in this case.

*Bentley's Luggage Corporation*, an advisory opinion issued by the National Labor Relations Board's Office of General Counsel ("OGC"), is not binding on this Court.[24] To the extent the Court considers it, the Court notes that unlike the facts alleged here, in *Bentley's Luggage Corporation*, the employer threatened to terminate any existing employee who refused to sign the arbitration agreement, and actually terminated an employee who refused to sign the arbitration agreement.[25]

The Court concludes that the NLRA does not preclude mandatory arbitration of Plaintiffs' claims.

*Whether the arbitration provision is enforceable against April Ellis*

Plaintiffs' final contention is that the arbitration provision is unenforceable against Plaintiff Ellis, who was a minor when she signed the Agreement. As a general rule, a contract with a minor is voidable at the discretion of the minor.[26] Texas law defines a minor as an unmarried person under eighteen.[27] However, once a minor turns eighteen, her repudiation of a contract executed when she was a minor is only valid if conveyed to the contracting party within

---

(Aug. 21, 1995).
[24] *Id.*
[25] *Id.* at *5.
[26] *Dairyland County Mutual Insurance Company of Texas v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973).
[27] Tex. Civ. Prac. & Rem. Code §§ 129.001, 129.002.

a reasonable time after her eighteenth birthday.[28] What constitutes a reasonable time is a question of fact to be determined by the particular circumstances of the case.[29] Here, Plaintiff Ellis turned eighteen on April 2, 2007, and she repudiated the Agreement less than six months later, in Plaintiffs' Response dated September 14, 2007. The relevant issue, therefore, is whether this interval was a reasonable period.

Defendants define a reasonable period based on the terms of the Agreement, which provided employees a five day window in which to renounce the Agreement. Accordingly, Defendants maintain that Ellis's rejection of the Agreement was only valid if conveyed to Golden by April 7, 2007—five days after her eighteenth birthday. Defendants' analysis, however, is unpersuasive. Distinct concerns underlie the revocation period specified in the Agreement, on the one hand, and the reasonable period to repudiate a contract afforded minors under Texas law, on the other. The five day revocation period protected legal adults from hasty or ill considered decisions, by offering them a brief period in which to renounce the Agreement. In contrast, the reasonable period afforded minors serves a different purpose, ensuring them adequate time to discover the relevant contract, appreciate its present significance, and evaluate the wisdom of accepting or rejecting its benefits and obligations. These distinct purposes counsel against relying on the revocation period specified in the Agreement to determine a reasonable period for Ellis to reject the arbitration provision.

Additional factors confirm that five days is an unreasonable period. The Agreement focused on sophisticated procedural issues, including Ellis's waiver of judicial remedies and her relinquishment of negligence claims against Golden. Indeed, the Agreement was not an

---

[28] *Robinson v. Roquemore*, 2 S.W.2d 873, 874 (Tex. Civ. App. 1938).
[29] *Id.*

employment contract, but rather a companion agreement required for Plaintiff's participation in Golden's benefits Plan. Thus, Ellis was unlikely to grasp its continued significance after her employment ended in December, 2006. Further, no events occurred immediately after Ellis's eighteenth birthday that would have alerted her to the arbitration provision's continued importance. Until suit was brought and Golden sought to enforce the arbitration provision, Ellis had no reason to appreciate its significance. Thus, Ellis required more than five days to discover the Agreement's import, and to assess the wisdom of accepting or repudiating it. Accordingly, the Court concludes that Ellis's rejection of the Agreement, less than six months after her eighteenth birthday, occurred within a reasonable period of time and was thus valid.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration is **GRANTED** in part and **DENIED** in part. All Plaintiffs, with the exception of April Ellis, are required to submit their claims against all Defendants to arbitration. Their claims are therefore **DISMISSED**.

**SO ORDERED.**

February 1, 2008.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS